**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SARA LESENDE AND VICTOR LESENDE, her husband,<br><br>              Plaintiff,<br><br><br>    v.<br><br>POLICE OFFICER ARNOLD BORRERO, et. al.,<br><br>              Defendants. | Civ. No.  06-4967 (DRD)<br><br><br><br>**O P I N I O N** |

*Appearances by:*

Nusbaum, Stein, Goldstein, Bronstein & Kron
by:  Robert D. Kobin, Esq.
20 Commerce Boulevard
Suite E
Succasunna, NJ 07876

         *Attorney for Plaintiffs,*

City of Newark, Corporation Counsel
by:  Avion Monique Benjamin, Esq.
920 Broad Street
Room 316
Newark, NJ 07102

         *Attorney for Defendants.*

**DEBEVOISE, Senior District Judge**

        Plaintiff, Sara Lesende, moves for reconsideration of the Court's March 8, 2010 Opinion

and Order granting summary judgment in favor of Defendant, the City of Newark ("City"), on

Count Eight of the Complaint, for violations of the New Jersey Civil Rights Act, N.J. Stat. Ann.

§ 10:6-2; Counts Nine and Twelve, for liability under 42 U.S.C. § 1983; and on the issue of pain

and suffering damages.  The general thrust of Lesende's suit against the City is that it should be liable for the actions of an off-duty police officer, Arnold Borrero, who stopped Lesende while she was driving her car, then assaulted and arrested her.  Lesende does not present any previously unavailable arguments in support of Counts Eight, Nine, and Twelve, but contends that the Court erred in ruling (1) that the City did not act with deliberate indifference by retaining Borrero in its employ before the incident; (2) that alleged violations of state law are insufficient to state a claim under § 1983; and (3) that the Complaint did not state a claim under the New Jersey Constitution.  Additionally, Lesende requests that the Court consider evidence of her medical expenses that was previously submitted in an impermissible fashion, to prevent injustice. The Court will grant Lesende reconsideration with regard to pain and suffering damages, Lesende's § 1983 claim that the City exhibited deliberate indifference in retaining Borrero and that the City's policy of placing all resisting arrest and assault on a police officer charges on a warrant caused a deprivation of Lesende's right to be free of unreasonable seizures.  Finally, the Court will grant reconsideration of Count Eight in light of the disposition of the other claims.

## I.  BACKGROUND

This case arises out of an altercation between Lesende and Borrero, a former City police officer.  The procedural history of this litigation and the facts underlying Lesende's claims are laid out in detail in the Court's March 8, 2010 Opinion.  In order to provide context for the current ruling, the Court repeats below some of the pertinent facts summarized in that Opinion.

### A.    The October 18, 2004 Incident

On October 18, 2004, Lesende was in her car when the driver of a blue van stopped her by pulling the van up in front of her car to block its path.  Borrero, the driver of the blue van, exited the vehicle and began yelling profanities and insults at her.  He produced his City police

officer badge and called for backup.  Borrero punched Lesende on the side of her face then opened her car door and punched, scratched, and pulled her hair while calling her names.  He pointed his gun at two bystanders and then pointed it at Lesende.  Five police cars arrived and another officer pointed his gun at Lesende, then arrested her and locked her in a police car. Borrero and another officer searched and kicked her car.

The officers transported Lesende to the police station, where she complained to a superior officer and asked that Borrero not be allowed near her.  Borrero nonetheless escorted Lesende to make a phone call.  He pulled her shirt and made fun of her accent, then handcuffed her to a chair and called her names when he returned her to the cell.  She spent twelve hours in jail.  On October 19, a warrant for her arrest was filed by the municipal county clerk.  Borrero and another officer signed the warrant, which alleged that Lesende had committed aggravated assault and resisted arrest.

Lesende suffered numerous physical injuries during the altercation, including scratches, a split lip, bruises, and back pain.  Since the incident, Lesende suffers from post-traumatic stress disorder, in the form of nightmares, flashbacks, fear, and anxiety.

Borrero's disciplinary record lists 45 internal affairs complaints resulting in the imposition of 15 penalties.  In three separate matters, three Administrative Law Judges ("ALJs") found that Borrero was not credible or made false statements.  Borrero's record includes four excessive force allegations (none of which were sustained), a sustained false reporting complaint, and a sustained allegation of assisting an out-of-state bounty hunter's search for a fugitive in New Jersey.  Borrero was suspended for 20 days for an act of disrespect or insubordination and the filing of a false report and assault complaint.  Additionally, three demeanor complaints, two of which were sustained, were lodged against Borrero for an incident that took place at Penn

Station during a 20-day period and involved motorists who questioned Borrero while being cited for parking violations.  The City issued an order for Borrero's psychological evaluation on September 28, 2004, in response to, yet nine months after the Penn Station demeanor allegations. The City eventually terminated Borrero's employment.

**B.      March 8, 2010 Opinion**

On October 8, 2009, the City of Newark and several individually named police officers (with the exception of Borrero, who did not join in the motion) moved for summary judgment on Lesende's fifteen-count Complaint.  At oral argument, counsel for Lesende agreed to the dismissal of all the named officer defendants with the exception of Borrero.  The Court thereafter granted the City's motion for summary judgment on Counts One, Two, Three, Four, Five, Seven, Ten, Eleven, Twelve, Thirteen, and Fourteen, and on the issue of pain and suffering for the state law claims; and denied summary judgment on Counts Six and Fifteen.  As Lesende is only requesting reconsideration of the Court's disposition of Counts Eight, Nine, Twelve and on the issue of pain and suffering damages, the Court will confine its background summary to those portions of the prior Opinion pertaining to the relevant claims.

In addressing Count Nine, the Court noted that Lesende premised § 1983 liability for the training and hiring of Borrero on two principal arguments:  (1) the City's failure to train Borrero about the protocol for off-duty police interactions with citizens and (2) the City's failure to properly review Borrero's disciplinary record, which lead to the City's retaining him in its employ.

In its examination of both arguments in the previous Opinion, the Court referred to the opinion of Wayne S. Fisher, Ph.D., whom Lesende hired to provide his expert opinion on the propriety of Borrero's use of force as an off-duty police officer; the integrity of the City's

4

investigation of Lesende's internal affairs complaint; and the propriety of the disciplinary actions the City took against Borrero, based on his disciplinary history and other factors.  Fisher opined that Borrero's off-duty actions with regard to Lesende failed to comport with accepted professional standards and that the City should, but did not have a policy directive regarding off-duty exercise of law enforcement authority.  Based on his review of the internal affairs investigation of Lesende's civilian complaint against Borrero, Fisher noted that the City's investigation appeared to comport with state-wide policy standards, but that the investigation was improperly limited in scope because it did not address the propriety of Borrero's arrest of Lesende or use of constructive force.  Additionally, Fisher noted that his review of internal affairs files generally revealed that the City should have more consistently taken into account an officer's prior disciplinary history when reviewing each subsequent individual allegation against him.  Finally, with respect to the City's retaining Borrero as a police officer, Fisher opined that the City should have taken steps to terminate Borrero before the October, 2004 incident.

After reviewing the submissions and arguments of the parties, the Court concluded that the City's failure to have a policy directive regarding off-duty exercise of police authority did not rise to the level of deliberate indifference; there was no pattern of prior incidents that should have caused the defendants to believe the police force had received inadequate off-duty training, the risk that an officer would beat a woman in her car for a perceived traffic violation was not an obvious one the City had ignored; and no training-related City policy was the "moving force" behind Lesende's injury.  Next, the Court concluded that Lesende had failed to adduce evidence that a failure to take the employee's entire record into account when performing internal affairs investigations was a custom attributable to the City; rather, the evidence showed that the City had a haphazard record of occasionally including a review of an officer's disciplinary history and

failing to do so on other occasions.  Additionally, the Court noted that although Borrero's disciplinary record was extensive, it did not show that Borrero was highly likely to use excessive force.

The Court dismissed Count Twelve, which alleged that a violation of the Rules Governing the Courts of the State of New Jersey should give rise to a § 1983 claim. The Court concluded that violations of state law are insufficient to state a § 1983 claim against the City. The Court also granted summary judgment on Lesende's Count Eight, premised on the New Jersey Civil Rights Act, since the Court had determined that the City was not liable for any violation of Lesende's federal constitutional rights and Lesende had not argued in her opposition papers to the motion that the City had violated her rights under the New Jersey State Constitution.  Additionally, the Court dismissed Lesende's request for pain and suffering damages on her state law claims against the City because Lesende had not provided admissible evidence showing that her medical treatment expenses exceeded $3,600 as required by the New Jersey Tort Claims Act.

## II.  DISCUSSION

### A.  Standard of Review

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).  As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling.  See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'"  The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration."  Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

**B.     The Pending Motion**

Lesende does not allege that there has been any change in the controlling law since the Court's March 8, 2010 Opinion, and has not presented any new evidence that was not available prior to that ruling.  Therefore, Lesende must demonstrate "the need to correct clear error of law or prevent manifest injustice" in order to prevail.

### i.     *Pain and Suffering Damages for State Law Claims*

Lesende asks the Court to reconsider its grant of summary judgment on pain and suffering damages for her state law claims.  Lesende recognizes that her medical expenses were not previously presented in a legally sufficient manner, but asks that the Court nonetheless consider the evidence of her medical expenses to promote a fair outcome.  The City does not dispute that Lesende has proved her medical costs exceed the monetary threshold, but requests

7

that the Court not consider the evidence of her medical costs because it was not properly presented in response to the previous motion. Since Lesende could have submitted her medical bills in an admissible fashion in support of her opposition to the original motion, the City contends that reconsideration is not merited.

It is well-established that the non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. See Fiorglio v. City of Atlantic City, 996 F. Supp. 379, 384 (D.N.J. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The policy reason for this requirement is clear. Since summary judgment is a determination on the merits as a matter of law, the quality of the evidence must be of the same character as would be admissible at trial. Notably, the list that counsel submitted in Lesende's opposition brief to the original motion differs from the list Lesende's counsel submitted in support of the current motion. The original list presented a sum total of medical expenses of $6,635.70, whereas the list supported by evidentiary proof lists a total of $5,415.45 in medical expenses. The figures per doctor or entity in some cases differ between the two lists. These discrepancies serve as instructive examples of the importance of submitting admissible evidence rather than relying on a cavalierly compiled list embedded in an attorney's legal argument.

The Court, however, will not rest on rigid formalism. The evidence shows that Lesende was treated by several doctors for physical and psychological injuries following the incident, and the medical costs of her treatment exceeded the $3,600 threshold mandated by statute. Since the Defendants do not contest that Lesende has met the monetary threshold, the Court will allow Lesende to proceed with her request for pain and suffering damages in order to avoid manifest injustice. The Court's grant of summary judgment on the issue of pain and suffering damages

will be reversed to avoid injustice to Lesende for her attorney's mistaken exclusion of then-available admissible evidence.

> ### ii.     Count 9:  § 1983 Claim for Fourth and Fourteenth Amendment Violations Based on the City's Training and Retention of Borrero

Lesende requests reconsideration of the Court's determination that no reasonable jury could find that the City exhibited deliberate indifference by retaining Borrero in its employ at the time of the incident.  Lesende contends that (1) the Court's reliance on Bd of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397 (1997), was erroneous; (2) the Court should have relied on Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996), which Lesende contends is "on all fours with" the present matter; (3) the Court did not resolve all inferences of fact in Lesende's favor when it noted that four excessive force allegations against Borrero were not sustained.  Notably, Lesende did not cite Beck or Bryan County in her opposition or sur-reply to the original motion.  Lesende does not appear to challenge the Court's holding that the City did not exhibit deliberate indifference by allegedly not training Borrero in proper off-duty comportment.

Lesende contends that Bryan County is inapplicable because it is a different kind of case; namely, liability in Bryan County was premised on a hiring decision rather than the decision to retain an employee.  The Court has no basis to reconsider its conclusion that Bryan County provides controlling precedent for § 1983 cases premised on hiring or retention, since "both claims are based on an allegedly flawed review of a person's record."  Lesende, 2010 U.S. Dist. LEXIS 20519 *44 (D.N.J. March 8, 2010).

Lesende also argues that the Court should not have required her to show a causal link between Borrero's record and his use of force against Lesende.  This argument reflects a misunderstanding of a central holding of <u>Bryan County</u>, in which a majority of the Court noted:

> …[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that this officer was highly likely to inflict the <u>particular</u> injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

520 U.S. at 412 (emphasis in original).

Notably, as the Court previously wrote, relying on <u>Bryan County</u>, 520 U.S. at 415, a hiring claim differs from other § 1983 theories of municipal liability because the danger that municipal liability for a hiring decision will collapse into <u>respondeat superior</u> is much higher, because in the broadest sense, every injury is traceable to a hiring decision.  The Court finds no reason to reconsider its holding that <u>Bryan County</u> controls the Court's analysis.

Lesende next argues that <u>Beck</u> dictates a result contrary to the Court's previous holding.  In <u>Beck</u>, 89 F.3d 966, the Court of Appeals held that a reasonable jury could find the city liable under § 1983 for tacitly authorizing the use of excessive force when the plaintiff set forth evidence that the city had a policy of inadequately investigating excessive force complaints against police officers.  The Court of Appeals held that the city's investigation process in <u>Beck</u> was structured to curtail disciplinary action; the investigators did not consider prior complaints against the police officer; did not give weight to the testimony of the complainant or any witness who was with the complainant at the time of the incident, even if the investigator found that person to be credible; and did not probe the credibility of the police officer.  <u>Id.</u> at 974.  Almost all complaints were resolved in favor of the accused officer.  Thus the Court of Appeals

10

concluded that a reasonable jury could find that the city's investigation policy granted police officers virtual impunity.  A year-end internal report issued in 1991 that was circulated to police officials highlighted the city's investigative policies that led to many allegations of excessive force going unpunished, but the city took no action in response.  Id. at 974.  The Court of Appeals concluded that, "continued tolerance of repeated misconduct facilitates similar unlawful conduct in the future."  Id.  at 974-75.

Beck is distinguishable from the instant matter in two important aspects.  As the Court determined in its previous opinion, Lesende has not presented evidence that would lead a reasonable jury to conclude that any faults in the investigation of civilian complaints against police officers like Borrero were caused by a policy or custom of the City.  Rather, as the court stated in its prior opinion, Lesende presented evidence that the City's internal affairs investigations were historically inconsistent as to whether they took into account an officer's prior disciplinary history or not.  As such, even taking the facts in the light most favorable to Lesende, the failure to consistently consider each individual complaint in the broader context of an officer's disciplinary record constituted a series of isolated incidents rather than a persistent municipal custom.

Additionally, in Beck, the specific record of the police officer whose conduct injured the plaintiff in that case—which included five excessive force complaints in five years—was relevant to whether the city had a policy of tacitly approving the use of excessive force.  Id. at 972.  Here, Lesende did not present evidence that the investigations were so deficient so as to constitute virtual acquiescence in the repeated use of excessive force by the City's officers.  Borrero's own disciplinary history differs factually in important ways from the record of the officer in Beck.  Borrero's bad acts did not go unpunished; rather, he was punished multiple

times by ALJs and internal affairs.  Of the 45 internal affairs investigations regarding Borrero, 15 penalties were imposed.

Although none of the above arguments give the Court reason to reconsider its dismissal of Count Nine, the Court is persuaded by Lesende's final argument that reconsideration based on an error of law is merited.  Lesende argues that the Court weighed the evidence of Borrero's record rather than merely determining whether there was a genuine issue for trial.  Lesende is correct that the Court's function on a summary judgment motion is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It was not the place of the Court, on a motion for summary judgment, to determine whether a review of Borrero's record would necessarily have led a reviewing officer to the conclusion that Borrero would use excessive force.  Rather, the Court should have determined whether a reasonable jury could find that Borrero's record showed that it was obvious that he would use excessive force.

The Court erred previously in stating that no jury could find the necessary linkage between Borrero's record and the particular constitutional deprivation—excess force—necessary for § 1983 municipal liability for a hiring decision.  The Court previously stated:  "Borrero's record does contain four excessive force allegations, but none of those complaints were sustained."

Here, however, unlike in Bryan County, there is some link between incidents in Borrero's record and the specific constitutional deprivation at issue that could supply the necessary inference of causation.  Four separate complaints were lodged against Borrero for excessive force from 2000 to 2004.  Lesende's complaint of excessive force against Borrero was a fifth.  A reasonable jury could give weight that the fact that four civilians had lodged complaints of

excessive force against Borrero, whether or not the allegations were sustained.  An internal affairs finding of "not sustained" could result from various contingencies.  The complainant could decide not to further prosecute his or her claim for whatever reason, or the investigator might be unable to uncover sufficient evidence to support the claim.  In fact, the claim by Lesende was deemed "not sustained" in the first instance.  Only after other witnesses came forward did the internal affairs department forward her complaint to the prosecutor.  A reasonable jury could draw an inference from the sheer volume of civilian excessive force complaints made against Borrero, even if the individual internal investigations did not eventually yield penalties.

The Court should not have weighed Lesende's evidence by discounting the relevance of the four "not sustained" excessive force allegations.  Drawing an inference from the four excessive force complaints could supply a jury with the necessary causal link between the type of constitutional deprivation and Borrero's record.  A jury should be allowed to determine whether the City acted with deliberate indifference when it retained Borrero in its employ despite his extensive record.  The Court will grant Lesende's motion for reconsideration of Count Nine and that portion of Lesende's claim is reinstated.

### iii.    *Count 12:  42 U.S.C. § 1983 Claim for Fourth and Fourteen Amendment Violations Based on the Rules Governing the Courts of the State of New Jersey, 3:3-1(c) and 3:4-1(a)*

Lesende argues that the Court erred in granting summary judgment in favor of the City on her § 1983 claims premised on alleged violations of the Rules Governing the Courts of the State of New Jersey ("RGC"), 3:3-1(c) and 3:4-1(a).  Those rules provide parameters for whether to issue a summons or a warrant, which in turn determines whether an arrestee will be released or held in jail.  In the previous opinion, the Court stated that "alleged violations of state law are

insufficient to state a claim under § 1983." <u>Lesende v. Borrero</u>, 2010 U.S. Dist. LEXIS 20519 *51 (citing <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1468 (3d Cir. 1992)).

Lesende now offers two bases for requesting reconsideration of the Court's prior determination regarding Count Twelve:  (1) that the Court failed to consider whether the City's alleged failure to comply with RGC 3:3-1(c) and 3:4-1(a) violated Lesende's state constitutional rights, (Pl. Br. in Supp. Mot. Recons. 14-18); and (2) that the Court should consider <u>Anela v. City of Wildwood</u>, 790 F.2d 1063, 1067 (3d Cir. 1986) and <u>Talbert v. Kelly</u>, 799 F.2d 62 (3d Cir. 1986), which Lesende contends provide support for her position, (Pl.'s Reply Br. in Supp. of Mot. Recons. 2-3).  The Court will examine each of Lesende's arguments in turn.

The first argument does not rely on any newly discovered evidence or new legal precedent.  Rather, it asserts the same arguments that Lesende submitted in a sur-reply to the City's motion for summary judgment.  The Court did not consider whether violations of RGC 3:3-1 and 3:4-1 violated her state constitutional rights in relation to Count Twelve because Count Twelve does not appear to reference the state constitution.  Count Twelve is captioned "Violations of R. 3:3-1 and 3:4-1 violate Plaintiff's State Rights and violate 42 U.S.C. § 1983 and the 4th and 14th amendments of the United States Constitution."  Accordingly, in the prior opinion, the Court read Count Twelve as only stating a claim under § 1983 based on alleged violations of Lesende's state rights under RGC 3:3-1 and 3:4-1.  The Court construed the Complaint thus in part because in other portions of the Complaint, the Constitution of the State of New Jersey is specifically cited as a basis for relief where applicable; its absence from Count Twelve lead the Court to believe that that claim was only based on § 1983.  Moreover, Lesende did not assert arguments based on the New Jersey Constitution in her opposition papers to the motion for summary judgment.  In fact, Lesende did not address Count Twelve at all in her

14

opposition to the motion for summary judgment, but rather addressed it in a sur-reply which, during oral arguments the Court decided to consider although it was filed impermissibly.  In that sur-reply, Lesende did not make any legal arguments that would have led the Court to believe that the New Jersey Constitution was asserted as a basis for relief under Count Twelve.

The second argument raises legal theories that were not advanced in Lesende's previous briefs.  Lesende did not cite controlling Court of Appeals cases, Anela v. City of Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986), or Talbert v. Kelly, 799 F.2d 62 (3d Cir. 1986), in her opposition to the motion for summary judgment.  In fact, Lesende did not even cite those cases in her first brief in support of the instant motion for reconsideration; rather, she cited them in a reply brief in support of the motion for reconsideration, which was filed without the Court's permission.[1] Controlling legal precedent that could have been raised in support of the original motion does not form a basis for reconsideration.  Additionally, the court need not consider a brief filed in contravention of the local rules.  Therefore, for various reasons, the Court is not bound to grant reconsideration on this issue.

However, having reviewed the arguments in Lesende's reply brief, the Court finds that they may be meritorious and would lead the Court to vacate its grant of summary judgment on Count Twelve and allow Lesende to continue with that claim.  The Court finds that reconsidering Lesende's arguments in light of the cited case law will prevent the manifest injustice that would result were Lesende to be prematurely barred from pursing her potentially meritorious claim against the City.

---

[1] L. Civ. R. 7.1(d) provides that:  "[n]o reply papers shall be filed on a motion for reconsideration pursuant to L. Civ. R. 7.1(i)…"

In Lesende's previous submissions, she argued strenuously that the City had a policy of noncompliance with RGC 3:3-1 and 3:4-1.  The Court did not err when it held previously that violations of a state law alone are insufficient to state a § 1983 claim.  See Kulwicki, 969 F.2d at 1468 (citing Rose v. Bartle, 871 F.2d 331, 347 (3d Cir. 1989)).  The Court did not reach the constitutional question because Lesende did not argue that the policy of non-compliance with RGC 3:3-1 and 3:4-1 had deprived her of her constitutional rights.

In O'Brien v. Borough of Woodbury Heights, 679 F. Supp. 429, 437 (D.N.J. 1988), this Court explained that a violation of Rule 3:4-1 does not constitute a per se violation of a plaintiff's constitutional rights.  The Court noted the teaching of Talbert, 799 F.2d at 68, that "if the procedure a municipality chooses violates or is contrary to state law, but meets federal standards, we may not set it aside."   The Court in O'Brien thereafter stated that RGC 3:4-1 "does, however, incorporate the Fourth Amendment's requirement that a judicial determination of probable cause be had 'as a prerequisite to extended restraint of liberty following arrest.'"  Id. at 437 (citing Gerstein v. Pugh, 420 U.S. 103, 114 (1975)).

The legal issues that Lesende's new argument for § 1983 liability presents are (1) whether detaining Lesende, rather than releasing her after booking, deprived Lesende of her constitutional rights under the Fourth and Fourteenth Amendments; (2) whether issuing a warrant rather than a summons for all persons against whom assault on a police officer was claimed was a policy of the City; and (3) whether the policy proximately caused the constitutional deprivation.

In Anela, 790 F.2d at 1065, the Court of Appeals considered whether, in light of the line of cases following Monell v. Dep't of Soc. Servs. of New York City, 436 U.S. 658 (1978), the defendant city should be liable under § 1983 for holding a group of women who were arrested

16

for violating an anti-noise ordinance overnight instead of releasing them subject to a summons. The Court of Appeals noted that the city followed a "cash bail schedule" established by a municipal judge.  The city's policy of following the bail schedule resulted in the city routinely detaining persons who had committed minor offenses overnight rather than issuing a summons and releasing them, as mandated by RGC 3:4-1.  Id. at 1066.  The Court of Appeals noted that RGC 3:4-1 was designed to protect the legal rights of arrestees, and held that the city's "routine noncompliance with the controlling Rule 3:4-1 could be ascribed to municipal decision makers and amounted to a policy under Monell for the purposes of § 1983 liability."  Id.  at 1067.  The Court of Appeals did not decide whether the detention had violated the plaintiffs' constitutional rights, but remanded the matter to the district court for further proceedings.

In Talbert, 799 F.2d at 68, the Court of Appeals again addressed RGC 3:4-1 in the context of a different municipal policy.  The plaintiffs claimed that their Fourth and Fourteenth Amendment rights were violated when they were held in jail for four days after their arrest for a misdemeanor, theft of cobblestones from a street.  Id.  at 63.  Assuming that the length of the plaintiffs' detention was a violation of their rights under the Fourteenth Amendment, the Court of Appeals found that the long detention was not caused by a municipal policy of holding an accused person until he appeared before a magistrate.  Rather, the long detention was caused by a breakdown in that policy; for some unexplained reason, the magistrate judge recessed the Friday court session before it reached the plaintiffs' bail hearings.  Then, a station-house agent failed to call the magistrate judge who was available at all times during the weekend while the court recessed.  Both causes for delay were the result of municipal employees not following the city's policy of having bail hearings in municipal court.  The Court of Appeals held that it was not a

17

policy of the municipality, but a failure to properly implement the municipality's policy, that had caused the alleged constitutional deprivation, so the municipality should not be liable.

In O'Brien, 679 F. Supp. at 436-37, two plaintiffs challenged a municipality's policy of detaining arrestees for up to twenty-four hours upon a police officer's unreviewed determination that the person arrested poses a threat to himself, others, or property, pursuant to RGC 3:4-1. The Court noted that such extended detention "pursuant to the exercise of unbridled discretion on the part of a law enforcement officer is precisely the type of harm that the Gerstein holding seeks to avoid." Id. at 437 (citing Gerstein, 420 U.S. at 116-119). The Court declined to grant summary judgment because the facts did not show whether the plaintiffs were detained for a longer period than was necessary to conduct administrative steps in connection with their arrests and the record did not show whether a magistrate judge was available during the plaintiffs' period of incarceration. Id.

In this case, summary judgment should not have been granted if Count Twelve of the Complaint presents a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Lesende contends that it is the City's policy to place all resisting arrest and assault on police officer charges on warrants, and that that policy proximately caused Lesende's unconstitutional detention. Lesende offers the deposition of Tyrone Broner, a Lieutenant who has been employed by the Newark Police Department for 18 years. (Broner Dep. 9:25-10:1, June 26, 2008.) Broner was a Sergeant at the time of the incident. Borrero arrested Lesende the morning of October 18, 2004. Later that afternoon, Broner took over the central processing desk from another employee. Broner signed the incident report written by Borrero at 3:00 p.m. that afternoon and classified the incident, which entails placing a class seal in the class section and the statute of the offense. (Id. 21:3-6.) He also signed the complaint warrant. Broner stated that

18

it is the City's policy to place all charges involving aggravated assault against a police officer on a complaint warrant.  (Id. 30:10-22.)  Broner signed the complaint warrant against Lesende based entirely on the nature of the charge—alleged assault on a police officer.  (Id. 32:21-25.)  Lesende remained in jail until she could post bail.

Lesende stated that she was detained for 12 hours.  The Court does not know how much of that time could be attributed to reasonable administrative procedures.  However, based on the undisputed facts Lesende presented in support of Count Twelve, the Court finds that summary judgment is not warranted at this juncture.  A reasonable jury could find that her detention without a probable cause determination by a judge violated her right to be free of unreasonable seizures, guaranteed by the Fourth and Fourteenth Amendments to the Constitution, and that the extended detention was caused by a municipal custom.  The Court will vacate its disposition of Count Twelve in its March 8, 2010 Opinion and Order.  Summary judgment will now be denied for Count Twelve and Lesende will be allowed to continue with that claim.

### iv.  Count 8:  New Jersey Civil Rights Act

In light of the Court's above determination, Lesende may have a valid claim for violation of the New Jersey Civil Rights Act, based on a violation of her federal or New Jersey constitutional rights.  Accordingly, the Court will also reverse its disposition of Count Eight. Lesende will be allowed to pursue her claims under the New Jersey Civil Rights Act.

### III. CONCLUSION

The Court has decided to reconsider various portions of its previous Opinion.  As a result, the previous grant of summary judgment with respect to pain and suffering damages, Count Eight, the portions of Count Nine relating to Lesende's § 1983 claim for municipal liability

based on the City's retention of Borrero, and Count Twelve are vacated.  Lesende will be

allowed to continue pursuing those claims.

                                            **s/ Dickinson R. Debevoise**
                                            DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: May 19, 2010