**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SARA LESENDE and VICTOR LESENDE | |
| Plaintiffs, | Civ. No. 06-4967 (DRD) |
| v. | **<u>O P I N I O N</u>** |
| OFFICER ARNOLD BORRERO and CITY OF NEWARK, | |
| Defendants. | |

*Appearances by:*

ANNA P. PEREIRA, CORPORATION COUNSEL
by:     Avion M. Benjamin, Assistant Corporation Counsel
920 Broad Street, Room 316
Newark, New Jersey 07102

   *Attorney for Defendant City of Newark[1]*

---

[1]     Plaintiffs' counsel is not listed, as he has made no appearance. Robert D. Kobin, counsel for Mr. and Mrs. Lesende, failed to file timely opposition papers in connection with this motion, originally due August 22, 2011. When he was notified by the Court after the due date had passed, he requested an extension. He was granted an extension to September 6, 2011, but failed to file papers by that date as well. When he was again informed by the Court, he requested another extension. He was granted an additional extension to September 14, 2011, but that date also came and went with no papers and no communication from Mr. Kobin. In a September 27, 2011 letter, after being informed that in view of his failure to respond to the motion, the motion would be decided on the papers, Mr. Kobin asked for a further extension, belatedly stating that he had been unable to obtain a transcript of the first day of Mrs. Lesende's testimony. The Court is confident that the parties' trial notes and recollections provide full information about Mrs. Lesende's testimony and the Court will grant no further extensions. The motion will be decided on the papers. To ensure that Mrs. Lesende is aware of what is transpiring, her opportunity to obtain a judgment, and the risk of having to retry the case, the Court will send her a copy of this Opinion.

**DEBEVOISE, Senior District Judge**

This case arises out of a traffic dispute and subsequent arrest. Plaintiff Sara Lesende claims that she was badly beaten by off-duty Newark Police Officer, Defendant Arnold Borrero, after an argument concerning her driving. Over the course of the following months, Mrs. Lesende was prosecuted by the Essex County Prosecutor's Office on the basis of sworn statements made by Mr. Borrero. These charges were frivolous, false, and were ultimately dropped after repeated obstruction and delay by county prosecutors. Mr. Borrero was later convicted of assaulting Mrs. Lesende during the arrest and fired from the Newark Police Department. Mrs. Lesende and her husband, Victor Lesende subsequently brought a variety of civil rights claims against Mr. Borrero and the City of Newark, charging violations of New Jersey and Federal Civil Rights Law. After a five day trial, a jury found for Plaintiffs, awarding Mrs. Lesende $2.7 million in compensatory damages. The jury also awarded Mr. Lesende $75,000 in compensatory damages.

Presently before the Court is a motion by the City of Newark under Rule 59(a)(1)(A) for a new trial, or in the alternative, remittitur. For the reasons set forth below, Defendant's motion for a new trial on liability is DENIED. Defendant's motion for remittitur is GRANTED. A new trial as to damages will be ordered unless Plaintiffs accept a new compensatory damages award of $750,000 within 30 days.

## I.      BACKGROUND

On December 18, 2004 at approximately 8:20 am, Mrs. Lesende drove her car near the intersection of Elm and Jefferson Streets in Newark, New Jersey. While circling the block looking for a parking space near her home, she was abruptly stopped by a blue unmarked van driven by Mr. Borrero, then an officer with the Newark Police Department. Why Mr. Borrero

stopped Mrs. Lesende remains unclear,[2] but once he did, the situation spun rapidly out of control. Mr. Borrero started a loud argument with Mrs. Lesende, claiming that she had been driving her car in an unsafe fashion. Believing that she did not accept his authority, Mr. Borrero produced his badge and gun. He opened her car door, climbed on top of Mrs. Lesende and proceeded to attack her with his fists, causing serious injury to her neck, face and ribs. Mrs. Lesende, a small and unthreatening woman, was beaten so brutally by the large police officer that pieces of her dental work were separated from her teeth. A crowd gathered, and multiple witnesses testified that Mr. Borrero savagely assaulted Mrs. Lesende. When an elderly bystander attempted to intervene, Mr. Borrero turned his weapon on the man and threatened to kill him.[3]

Additional officers arrived at the intersection, and Mrs. Lesende, weeping and injured, was handcuffed and put in the back of a police car. While she watched, Mr. Borrero and other officers ransacked and kicked Mrs. Lesende's car. Several witnesses testified at trial that they were discouraged from reporting Mr. Borrero's conduct by the other officers who came to the scene. One witness reported that he was retaliated against by the Police Department after he attempted to complain about the incident.

The officers impounded Lesende's vehicle and took Mrs. Lesende to the police station. Once at the station, Mrs. Lesende was held for the better part of a day without counsel. She was repeatedly harassed by Mr. Borrero, who handcuffed her to a chair, cursed at her and called her a whore. The other officers at the station made no effort to assist Mrs. Lesende or tend to her injuries. To the contrary, when Mrs. Lesende spoke to two internal affairs officers, begging for help, they advised her that it was "unnecessary" to document the extent of her wounds. Only

---

[2]     Mr. Borrero was occasionally present at trial, but did not testify or offer evidence in his defense.

[3]     The City of Newark settled a lawsuit brought by the bystander, Luis Cal, for $30,000. Cal v. City of Newark, ESX-L-8649-06 (N.J. Sup.).

after she pressed the issue did they agree to take photographs of her injuries. Photographs produced at trial show serious bruising on large portions of her body.

After approximately 12 hours of detention, Mrs. Lesende was released on $10,000 bail. Printouts from city computers suggest that bail was set by Judge Marilyn Williams. However no copy of the arrest warrant was preserved and no record of any proceedings before Judge Williams has been produced. While Mrs. Lesende was charged with assaulting a police officer and resisting arrest, Mrs. Lesende was not provided with a copy of her complaint or other supporting records upon release. Despite a clear obligation to preserve evidence, shockingly little documentation has been produced by the city concerning the handling of the Lesende matter. It appears that most of the records surrounding the incident have been destroyed.

The charges against Mrs. Lesende were eventually dismissed due to lack of prosecution and speedy trial violations. However in the months following the arrest, Mrs. Lesende was forced to hire counsel and appear in court on multiple occasions to answer the groundless and frivolous charges. Her efforts to see Mr. Borrero punished were stymied by both Mr. Borrero and the Newark Police Department. Mr. Borrero harassed and threatened Mrs. Lesende during her official appearances. Local prosecutors pursued Borrero's charges against Mrs. Lesende even after it was clear that they could not be sustained. Mrs. Lesende and her former counsel testified at trial that the Newark Police Department and Essex County Prosecutor's Office stonewalled them, refusing to comply with their discovery obligations in connection with the proceedings. Indeed, the prosecutors even failed to reveal the nature of the charges pending against Mrs. Lesende for several months. After Mrs. Lesende filed an official complaint against Mr. Borrero,

counsel for the City of Newark even attempted to revive previously dismissed traffic tickets in an effort to encourage Mrs. Lesende to drop the matter.[4]

The Newark Police Department engaged in equally appalling conduct. Mr. Lesende testified that he was told by a Newark police officer that no action would ever be taken by the city against Mr. Borrero. When Borrero was brought before Administrative Law Judge on disciplinary charges, the city "neglected" to present his prior disciplinary history, permitting him to lie about the extent of his past misconduct and avoid termination.[5] Borrero's extensive discipline file included 45 prior charges—including multiple findings that Mr. Borrero had either filed false assault charges or was "not credible" in his testimony.

On October 17, 2006, Mr. and Mrs. Lesende filed suit against Mr. Borrero and the City of Newark under 42 U.S.C. § 1983 and N.J.S. 10:6-2(c) seeking damages resulting from violations of Mrs. Lesende's civil rights under color of law, Newark's negligent training and supervision of Borrero, and loss of consortium. In an Order dated June 3, 2011, the Court granted Plaintiffs' motion for a directed verdict on their N.J.S. 10:6-2(c) claims, finding that the city had improperly detained Mrs. Lesende pursuant to an arrest warrant rather than a summons, in violation of Rule 3:3-1(a) of the New Jersey Criminal Court Rules.

At trial, Mr. and Mrs. Lesende testified about the assault, the false arrest, the prosecution, and Mrs. Lesende's physical, emotional, and financial injuries resulting from the incident. Plaintiffs also introduced testimony from James Porfido, the attorney who represented Mrs. Lesende in the criminal action brought against her by county prosecutors. Several witnesses to Mr. Borrero's attack on Mrs. Lesende testified concerning the assault. They also testified

---

[4]        That city attorneys would file a formal motion to reinstate a $50 traffic ticket is shocking.

[5]        The Civil Service Commission, with access to Mr. Borrero's file, later overturned the Administrative Judge's decision and terminated Mr. Borrero.

regarding subsequent efforts by Newark Police to suppress evidence. Finally, Plaintiffs introduced testimony from Wayne S. Fisher, Ph.D., the Director of the Policy Institute at the Rutgers University Law and Justice Center in Newark, and a highly qualified[6] expert on police training and procedure. Dr. Fisher had examined Mr. Borrero's disciplinary record and concluded that the city should have moved to terminate the officer well in advance of the encounter with Mrs. Lesende due to his lengthy history of dishonesty and dangerous misbehavior.

The city called few witnesses in its defense, including Detective Luis Vega, who was at the police station when Mrs. Lesende was arrested and Paul Bradley, the Essex County Prosecutor who managed the case against Mrs. Lesende. Neither disputed the details of Mr. Borrero's assault on Mrs. Lesende. Mr. Bradley claimed little or no recollection as to his handling of the case and could neither confirm nor deny Mr. Porfido's claims. Mr. Vega did not witness the assault on Mrs. Lesende and was not present during the alleged incidents of later harassment.

---

[6]     Fisher served as a law enforcement officer and detective with the Newark Police Department for nine years. From 1987 to 2003, he served as an appointed Deputy Director of the New Jersey Attorney General's Division of Criminal Justice. In that capacity, he exercised general leadership and supervisory responsibilities regarding local police on behalf of the state. Additionally, he was responsible for developing operational standards and directives for police agencies in areas such as the use of force, vehicular pursuit, internal affairs, and drug testing. Fisher also served as the Chairman of the New Jersey Police Training Commission, directing staff responsible for the development of the statewide police training curriculum and for oversight of the State's 23 certified police academies. That position involved a number of experiences pertinent to the present matter, including service: (1) as the directing author of the statewide Internal Affairs Policy and Procedures, issued by the AG in 1991, 1992, and 2000; (2) as an instructor in numerous training sessions regarding statewide internal affairs policy for internal affairs officers; (3) as the Chairman of the AG's Task Force on the Use of Force in Law Enforcement, which issued the Attorney General's Use of Force Policy in 2000; and (4) as an instructor in training sessions conducted in all 21 counties to prepare police trainers to train other officers in the provisions on the use of force policy.

On June 15, 2011, the jury found for Mr. and Mrs. Lesende, awarding Mrs. Lesende $2.7 million in compensatory damages.[7] The jury also awarded Mr. Lesende $75,000 in compensatory damages. On June 28, 2011, Mr. Borrero filed a notice of appeal. (Doc. No. 123). The appeal of the jury verdict is still pending.

On the basis of these facts, the City of Newark now moves under Rule 59(a)(1)(A) for a new trial, or in the alternative, remittitur, arguing that the $2.7 million verdict is not supported by the evidence and indicates that the jury was swayed by "passion or prejudice" in its deliberations.[8]

## II.      DISCUSSION

### A.      Standard of Review

The province of the jury as a fact-finder, even on issues of damages, is not casually disturbed. A jury award may not be overturned merely because it is an "outlier" or finds damages in excess of what the court would have determined on its own. Tormenia v. First Investors Realty Co., Inc., 251 F.3d 128, 138 (3d Cir. 2000) ("The standard of review, however, is not whether the jury's verdict deviates from a discernibly 'normal' award in comparable cases, nor whether such deviation would seem well-justified. These matters are … are not proper justification for courts to revise damage awards…that have already been issued by a jury."). A court reviewing a jury award has an "obligation ... to uphold the jury's award if there exists a reasonable basis to do so" and "may not vacate or reduce the award merely because it would have granted a lesser

---

[7]      The jury also awarded Mrs. Lesende $850,000 in punitive damages against Mr. Borrero.

[8]      While the papers do not specify, the instant motion appears to challenge only the $2.7 million damages award to Mrs. Lesende and not the $75,000 award to Mr. Lesende. The City's brief contains no analysis of the appropriateness of the $75,000 grant or similar "benchmark" awards in loss of consortium cases. Consequently, Mr. Lesende's award will be undisturbed.

amount of damages." <u>Evans v. Port Authority of New York and New Jersey</u>, 273 F.3d 346, 352 (3d Cir. 2001).

That said, the courts retain a duty to act in cases where a jury award is "so grossly excessive as to shock the judicial conscience." <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 719 (3d Cir. 2010) (citation omitted).[9] In those situations, where the court finds that "the amount of the award is inconsistent with the evidence in a case" it has the discretion to reduce the award or order a new trial. <u>Cortez</u>, 617 F.3d at 716.

A new trial on liability is required only where the defendant can show that "the jury verdict resulted from passion or prejudice." <u>Hurley v. Atlantic City Police Dept.</u>, 174 F.3d 95, 114 (3d Cir. 1999); <u>see also</u> 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2815 at 165 (2d ed. 1995) (remittitur "is not proper if the verdict was the result of passion and prejudice, since prejudice may have infected the decision of the jury on liability, as well as on damages. In those instances a complete new trial is required."). This requires evidence, as "[t]he size of the award alone is not enough to prove prejudice and passion." <u>Evans</u>, 273 F.3d at 352.

Where only the damages finding is suspect, a new trial is not required and the damages award may be reduced, or remitted. The "remittitur should be set at the 'maximum recovery that does not shock the judicial conscience.'" <u>Evans</u>, 273 F.3d at 355 <u>quoting</u> <u>Gumbs v. Pueblo Int'l, Inc.</u>, 823 F.2d 768, 774 (3d Cir. 1987). However, the court must also "offer a new trial as an

---

[9]    <u>Cortez</u> also discussed the parallel duty of the courts to reduce punitive damage awards that are unconstitutionally excessive in accordance with <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996). This form of remittitur, which the Court of Appeals for the Eleventh Circuit characterized as "really not a remittitur at all" in <u>Johansen v. Combustion Engineering, Inc.</u>, 170 F.3d 1320, 1331 (11th Cir. 1999) does not apply here, as no punitive damages were awarded—or could be awarded—against the City of Newark. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271(1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

alternative to a reduction in the award in order to avoid depriving the plaintiff of his/her Seventh

Amendment right to a jury trial." <u>Cortez</u>, 617 F.3d at 716.

Here Defendant has offered no evidence that the finding of liability was the result of

"passion or prejudice." Nor does it point to any faulty rulings or improperly admitted testimony

that might have overcome or misled the jury. Instead, Defendant admits—curiously—that its

argument concerning "passion or prejudice" is entirely assertionary. (Def. Br. 8) ("Defendant

***asserts*** that this verdict was the result of prejudice against the City of Newark and sounds[sic] in

the jury trying to send a message. As such, a new trial on damages should be granted.")

(emphasis added). The Court is neither permitted nor inclined to accept Defendant's assertions in

lieu of evidence. As such, Defendant's motion for a new trial on liability will be DENIED.

## B.     Remittitur

While a new trial on liability is inappropriate, the compensatory damages returned by the

jury are large enough to merit closer examination. Mrs. Lesende suffered no permanent physical

injury as the result of Mr. Borrero's savage attack. Nor has she offered evidence that her long-

term earning power or credit rating was permanently damaged by her baseless prosecution on

frivolous charges. Plaintiffs have offered evidence of the psychic trauma and emotional

damage[10] that Mr. and Mrs. Lesende experienced as a result of the attack, but at first blush it

seems doubtful that emotional trauma alone—even severe emotional trauma—can justify a $2.7

million compensatory damages award.

Defendant urges the Court to examine the awards entered in the cases it cites as a

"helpful guide" as to the appropriate "new damages award in this case." (Def. Br. 18). The Court

---

[10]     In its brief, the City of Newark takes the distasteful position that Mr. and Mrs. Lesende's
failure to divorce or abandon efforts to have children as the result of this incident bars significant
recovery on the basis of their strained relationship and loss of consortium. (Def. Br. 11, 18).
Counsel's casual dismissal of human suffering is callous and offensive.

is loathe to substitute the judgments of other parties, other courts, and other juries—even in the aggregate—for the reasoned decision-making of the jury in this case. The Court is also mindful of the Court of Appeals's instruction that a verdict may not be reduced merely because it "deviates from a discernibly 'normal' award in comparable cases." Tormenia, 251 F.3d at 138.

It would be particularly inappropriate to order a drastic remittitur based on the handful of decisions submitted by Defendant. In the interest of examining all available data, the Court will not confine itself to the self-serving cases in Defendant's brief when great volumes of information exists on jury awards and settlements in excessive force and malicious prosecution cases. Indeed, the Newark Police Department has faced scores of allegations of barbaric and unconstitutional behavior. Many of these cases have settled for significant dollar values. In Pendergrass v. Newark, 08-2936 (D.N.J.), Newark police officers were accused of badly beating one plaintiff and filing false charges against another. That case settled for $150,000 plus an additional $39,037 in reimbursement of legal expenses. In Stewart v. Gonzalez, 08-3250 (D.N.J), three tow-truck drivers were arrested on the basis of false charges filed by Newark police officers. No violence or excessive force was complained of, but as in this case, critical records concerning the arrest were "inadvertently" destroyed by the City. The case was settled for $90,000.[11]

Other municipalities in the region have seen even larger jury verdicts and settlements for excessive force claims related to unjustified arrests. In Chappell v. City of New York, 2009 WL 2385206 (N.Y.Sup.), a store clerk was arrested for an open container violation. After he was

---

[11]     Still larger settlements are likely to exist. In its recent petition to the Department of Justice, the American Civil Liberties Union of New Jersey documented how Newark often takes great pains to conceal large dollar value settlements against the Police Department. For example, the $1,000,000 December 2009 settlement of Snow v. Newark Police Department, ESX-L-410-07 (N.J. Sup) was not disclosed in normal City Counsel public records. That case involved a Newark police officer who shot an unarmed suspect 13 times, ultimately killing him.

released, he asked a police sergeant to return a tool that was taken from him during the arrest. The police sergeant shoved the clerk into a door, knocked him to the ground, and kicked him while he lay on the floor. The sergeant then filed false charges of battery against the clerk. The clerk sued the sergeant and the city. A jury awarded the plaintiff $200,000. In Byrd v. City of New York, 2010 WL 5166607 (N.Y. Sup) several New York police officers were accused of employing excessive force in the false arrest of two plumbers. The plumbers were carrying out repair work on the gas line of a Brooklyn house when local police arrested them without cause. In connection with the unreasonable arrest, the plumbers were shoved against a wall, forced onto a sidewalk, and violently handcuffed. During the arrest, they sustained bumps and bruises of their faces, wrists, and backs. The plumbers were then held for 18 hours before being released. All charges against the plumbers were dropped after two appearances in court. The City of New York settled the case for $350,000.

More distant cities have seen even larger verdicts and settlements, some of which have been explicitly upheld in the face of motions for remittitur. In Paradiso v. Obaldo, 2009 WL 5799690 (N.D.Ill.), two off-duty Chicago police officers arrived late to an appointment to view a residential property. When the agent refused to show them the property, the officers shoved the agent into a pile of rocks, pinned his arm behind his back, and made derogatory remarks about his sexual orientation. The officers then called other police to the scene and filed false charges of assault against the agent. The agent filed suit against the officers and the City of Chicago in federal court. A jury awarded the plaintiff $400,000 for the false arrest, excessive force, and malicious prosecution.

In Mason v. City of Chicago, 641 F.Supp.2d 726 (N.D.Ill. 2009) Chicago police officers arrested a passenger during a routine traffic stop. During the course of the arrest, officers

handcuffed the passenger behind his back, placed him on the ground and punched and kicked him repeatedly. One officer hit the passenger in the eye with his knee, fracturing his orbital bone. The passenger was arrested, false charges were filed against him, and he was held in jail without the opportunity to seek medical aid. In a subsequent lawsuit against the officers and the city, the passenger was awarded $625,000 in damages for excessive force and malicious prosecution. He was awarded an additional $440,000 in attorneys' fees, for a total recovery of $1,065,000. The city filed a post-trial motion for remittitur, but the jury verdict was sustained.

In Ibaenez v. Velasco, No. 96-5990, 2002 WL 731778 (N.D.Ill. April 25, 2002), a woman was beaten by several corrections officers while attempting to retrieve her boyfriend's property from a Cook County jail. After a verbal altercation with staff in which corrections workers employed racial slurs, the plaintiff was punched and kicked by several officers and then thrown out of the facility. The woman sued the three officers. A jury awarded her $2,500,000 in compensatory damages and an additional $2,500,000 in punitive damages. In denying a motion for remittitur, the court found that while the woman's injuries were "not serious" she had "presented evidence of bruising, scratches, and neck strain" that were sufficient, in tandem with "emotional injuries" and "PTSD" to justify the award. Id. at *10-11.

Damages awards are highly fact-specific. Even among cases involving excessive force and malicious prosecution, prior verdicts are, at best, imperfect guides as to the range of reasonably acceptable jury verdicts. The extent of physical injuries varies considerably from case to case. The trauma and reputational damage caused by malicious prosecution is exceedingly difficult to quantify. Some plaintiffs may be emotionally devastated by experiences that have little impact on others. But there is nothing in this case which suggests that Mrs. Lesende's

suffering was categorically less severe than that described in the cases related above. Indeed, there are many facts specific to this case that suggest particularly grievous harm.

Mrs. Lesende was violently seized by Mr. Borrero only only blocks away from her home. From the moment that the encounter began, Mr. Borrero's actions would have convinced anyone that his or her life was in serious danger. Mr. Borrero beat Mrs. Lesende severely for no reason at all. He turned his service weapon on her in anger and told her that she could be dead within moments. He showed absolutely no concern for the many witnesses who gathered at the scene, turning his weapon on them as well. Mr. Borrero was clearly a very dangerous man, particularly given his position and temperament. But he did not act alone.

The City of Newark has denied or misapprehended its role in this case from the very beginning. It has treated Mrs. Lesende as a nuisance, seeking damages for injuries suffered at the hands of a rogue officer. But all of the harms visited on Mrs. Lesende were direct consequences deliberate actions taken by city employees other than Mr. Borrero. Through its actions and inactions, Newark tacitly approved, enabled, concealed, and aggravated Mr. Borrero's violent antisocial behavior. Mr. Borrero was permitted to patrol the streets—armed—in spite of numerous past incidents of dangerous misconduct. Newark Police officers intimidated witnesses to conceal Mr. Borrero's crimes. Newark prosecutors pressed ridiculous charges against Mrs. Lesende in spite of Mr. Borrero's long record of dishonesty toward the courts. Newark attorneys—at best—failed to respect Mrs. Lesende's procedural rights in connection with her criminal prosecution and failed to preserve evidence of the false charges and slipshod treatment that she received at the hands of the Police Department. Newark police supervisors effectively concealed Mr. Borrero's disciplinary record from the Administrative Law Judge who evaluated

his punishment in this matter, ensuring that he would not be fired. And Newark police officers told Mr. Lesende that the city stood behind Mr. Borrero and would not protect his wife's rights.

The cumulative psychic effect of these actions cannot be understated. The City of Newark, in its actions toward Mrs. Lesende, sent the clear message that she could not be safe in her own home. Its officers harassed, intimidated, and brutalized her for sport. Its prosecutors tormented her with frivolous and false charges that threatened to strip her of her freedoms and ruin her career. And her husband was told by Newark police officers that Mr. Borrero could do anything that he wanted to them without fear of repercussions. No person should live in the kind of fear of their government that Mrs. Lesende was forced to endure. Official thuggery and government indifference are unacceptable in the third world. They are shameful here.

If the damages found by the jury are excessive, they are only barely so. As detailed above, numerous excessive force cases involving false arrest have settled for six figure amounts, even when the physical injuries are minor. When similar cases have gone to trial, juries have awarded even seven figure verdicts. The shock, horror, and powerlessness that a law abiding citizen feels when brutalized by the police is considerable and likely to lead to emotional damage of long duration. Any who would try to reduce these encounters to the cost of bandages and gauze would do well to consider the value of living in a free society. Few free men would choose to voluntarily surrender the right to be safe from state sanctioned violence and arbitrary incarceration, even at many multiples of the damages awarded to Mrs. Lesende.

The Court finds that a reasonable jury could have awarded $750,000 in compensatory damages to Mrs. Lesende. If Plantiffs will not accept this remittitur, a new trial will be ordered, as required to uphold their seventh amendment rights.

### III.    CONCLUSION

For the reasons stated above, Defendant's motion for a new trial on liability is DENIED.

Defendant's motion for remittitur is GRANTED. A new trial as to damages will be ordered

unless Plaintiffs accept a new compensatory damages award of $750,000 for Mrs. Lesende

within 90 days.


<u>s/ Dickinson R. Debevoise</u>
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: October 7, 2011