**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SARA LESENDE and VICTOR LESENDE<br><br>               Plaintiffs,<br><br>v.<br><br>OFFICER ARNOLD BORRERO and CITY OF NEWARK,<br><br>               Defendants. | Civ. No. 06-4967 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON, P.A.
by:     Robert D. Kobin, Esq.
20 Commerce Blvd., Suite E
Succasunna, New Jersey 07876

    *Attorney for Plaintiffs*

ANNA P. PEREIRA, CORPORATION COUNSEL
by:     Avion M. Benjamin, Assistant Corporation Counsel
920 Broad Street, Room 316
Newark, New Jersey 07102

    *Attorney for Defendant City of Newark*

**DEBEVOISE, Senior District Judge**

  This case arises out of a traffic dispute and subsequent arrest. Plaintiff Sara Lesende claims that she was badly beaten by off-duty Newark Police Officer, Defendant Arnold Borrero, after an argument concerning her driving. Over the course of the following months, Mrs. Lesende was prosecuted by the Essex County Prosecutor's Office on the basis of sworn statements made by Mr. Borrero. These charges were frivolous, false, and were ultimately dropped after repeated obstruction and delay by county prosecutors. Mr. Borrero was later convicted of assaulting Mrs. Lesende during the arrest and fired from the Newark Police Department. Mrs. Lesende and her husband, Victor Lesende subsequently brought a variety of civil rights claims against Mr. Borrero and the City of Newark, charging violations of New Jersey and Federal Civil Rights Law. After a five day trial, a jury found for Plaintiffs, awarding Mrs. Lesende $2.7 million in compensatory damages.

  After trial, the City of Newark filed a motion under Rule 59(a)(1)(A) for a new trial, or in the alternative, remittitur. Plaintiffs were given three opportunities to file papers opposing this motion, but failed to do so. The Court ultimately denied Defendant's motion for a new trial, but remitted the $2.7 million damages award to $750,000. Plaintiffs now ask the Court to reconsider its previous decision and reinstate the original damages verdict. For the reasons set forth below, Plaintiffs' motion for reconsideration is DENIED.

### I. BACKGROUND

  The facts of this case are set forth at length in this Court's previous opinions and need not be repeated here. (Doc. Nos. 65, 70, 131). The relevant facts are as follows. On December 18, 2004 at approximately 8:20 am, Mrs. Lesende was pulled over by Mr. Borrero while she was searching for a parking spot near her home in Newark. At the time, Mr. Borrero was an officer in

the Newark police department, but he was not on duty and was not in uniform. For reasons that are unclear, Mr. Borrero started a loud argument with Mrs. Lesende, claiming that she had been driving her car in an unsafe fashion. Believing that she did not accept his authority, Mr. Borrero produced his badge and gun. He opened her car door, climbed on top of Mrs. Lesende and attacked her with his fists, causing serious injury to her neck, face and ribs. A crowd gathered, and multiple witnesses testified that Mr. Borrero savagely assaulted Mrs. Lesende. When an elderly bystander attempted to intervene, Mr. Borrero turned his weapon on the man and threatened to kill him.

Additional officers arrived at the intersection, and Mrs. Lesende was handcuffed and taken to the police station. Once at the station, Mrs. Lesende was held for the better part of a day without counsel. During that time she was repeatedly harassed by Mr. Borrero. After approximately 12 hours of detention, Mrs. Lesende was charged with assaulting a police officer and resisting arrest and released on $10,000 bail.

In the months following the arrest, Mrs. Lesende was forced to hire counsel and appear in court on multiple occasions to answer the groundless and frivolous charges. At the same time, the Newark Police Department engaged in efforts to intimidate witnesses and discourage any action against Mr. Borrero. Indeed, Mr. Lesende testified that he was told by a Newark police officer that no action would ever be taken by the city against Mr. Borrero. In addition, when Mr. Borrero was brought before Administrative Law Judge on disciplinary charges, the city "neglected" to present his prior disciplinary history, permitting him to lie about the extent of his past misconduct and avoid termination. Borrero's extensive discipline file included 45 prior charges—including multiple findings that Mr. Borrero had either filed false assault charges or was "not credible" in his testimony.

On October 17, 2006, Mr. and Mrs. Lesende filed suit against Mr. Borrero and the City of Newark under 42 U.S.C. § 1983 and N.J.S. 10:6-2(c) seeking damages resulting from violations of Mrs. Lesende's civil rights under color of law, Newark's negligent training and supervision of Borrero, and loss of consortium. On June 15, 2011, a jury found for Mr. and Mrs. Lesende, awarding Mrs. Lesende $2.7 million in compensatory damages. On June 28, 2011, Mr. Borrero filed a notice of appeal. (Doc. No. 123). The appeal of the jury verdict is still pending.  On August 2, 2011, the City of Newark moved under Rule 59(a)(1)(A) for a new trial, or in the alternative, remittitur, arguing that the $2.7 million verdict was not supported by the evidence and indicates that the jury was swayed by "passion or prejudice" in its deliberations.

At this point, the unfortunate behavior of Plaintiffs' attorney, Robert Kobin, becomes significant. The return date on Defendant's motion for a new trial was originally set for September 7, 2011. Plaintiffs' opposition papers were due on August 22, 2011. Plaintiffs' counsel filed no papers on August 22, 2011 and did not contact the Court seeking an extension. Shortly after the deadline had passed, the Court contacted Mr. Kobin. After he was reminded of the deadline, Mr. Kobin submitted a belated request for an extension. His request was granted, and the due date for his papers was extended to September 6, 2011.

Mr. Kobin submitted no papers by September 6, 2011, and did not contact the Court seeking an additional extension. After the date had passed, the Court once again contacted Mr. Kobin and reminded him about the deadline. After he was reminded, Mr. Kobin sent another letter to the Court, requesting an additional extension to September 14, 2011. This belated request was also granted. However in spite of receiving two extensions, Mr. Kobin did not file

any papers by September 14, 2011 and did not contact the Court seeking an additional extension.¹

One week after the deadline had passed, the Court filed a notice on ECF informing the parties that the motion for a new trial would be decided on the papers. The notice appears to have reminded Mr. Kobin about the existence of this case. Shortly thereafter, on September 27, 2011 Mr. Kobin sent a letter to the Court requesting an additional extension. Mr. Kobin stated that when he first attempted to obtain the trial transcript in early September—several weeks after his papers were due, and more than two months after the trial concluded—he learned that portions of the first day of testimony from Mrs. Lesende were unavailable. Claiming that this testimony was essential to his opposition, he asked for another—open ended—extension. This final petition was rejected, and on October 7, 2011, the Court issued an Opinion and Order denying Defendant's motion for a new trial and granting its motion for remittitur.² The Court remitted the damages to $750,000 and gave Plaintiffs 90 days to decide whether to accept the remittitur or retry the case.³

---

¹ In his first two letters, Mr. Kobin blamed his repeated failures to abide by Court-ordered deadlines on the untimely death of his father. While the Court is sympathetic to Mr. Kobin's loss, this event does not excuse Mr. Kobin's failure to monitor deadlines and request extensions when needed. In addition, while Mr. Kobin claims that his unavailability was for "good reason" (Pl. Br. 3), he admits in his letters that at least some of the delay was due to a vacation that he took in late August after the response papers were already over-due. Moreover, this is not the first time that Mr. Kobin has ignored deadlines and prejudiced his clients' interests. Despite repeated admonition, Mr. Kobin failed to file a trial brief, as directed by the Court, potentially subjecting his clients to pre-trial dismissal of their claims. In addition, Mr. Kobin was scheduled to appear before the New Jersey Office of Attorney Ethics ("OAE") during the Lesende trial to answer charges related to his negligence in handling another matter. Van Ancken v. Kobin, Doc No. XB-2009-0033E (06/22/2009).

² In a statement to the New Jersey Law Journal, Mr. Kobin claimed that he was surprised by this result because he had been "led to believe" by Court staff that the extension would be granted. 206 N.J.L.J. 3 (Oct. 17, 2011). This is untrue. Mr. Kobin never spoke the Court himself, and no member of his office was ever told that the request would be granted.

³ In light of Mr. Kobin's inattention to the matter, the Court mailed a copy of the Opinion and Order directly to the Plaintiffs.

Plaintiff now asks the Court to reconsider its previous decision and reinstate the original damages verdict.

## II.  DISCUSSION

### A.  Standard of Review

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'" The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

Applying this standard, the Court will examine Plaintiffs' arguments.

**B.      Remittitur**

Given the narrow scope of a motion for reconsideration, Plaintiffs must shoulder a difficult burden. Plaintiffs may not rely on evidence or argument that could have been made available to the Court when the original motion was presented. Nor may Plaintiffs reargue points of law absent clear error or manifest injustice in the original adjudication.

Perhaps mindful of this restriction, Plaintiffs fail to marshal any evidence supporting the damages award that they seek. Plaintiffs' brief is completely devoid of citations to documentary evidence or the trial record. While Plaintiffs claim that the record is incomplete and that portions of the first day of testimony are unavailable, this does not fully explain Plaintiffs' failure to appropriately utilize any of the remaining testimony and/or evidence presented at trial. Plaintiffs do not substantiate any of Mrs. Lesende's economic damages and they do not provide any metrics by which Mrs. Lesende's non-economic damages may be evaluated.

Worse, what Plaintiffs' brief lacks in factual support it also lacks in support from relevant legal authorities. Plaintiffs point to no case, statute, treatise, restatement or scholarly work supporting a $2.7 million damages award grounded almost entirely in psychic injury. Indeed, Plaintiffs cite virtually no authority at all; submitting only one decision which upheld a significantly smaller award. While Plaintiffs make a novice effort to distinguish the cases described by Defendants, Plaintiffs provide no evidence that any court—anywhere—has ever upheld a damages verdict of the size and character returned here.

What arguments Plaintiffs do muster are threadbare, unbolstered by evidence, and unpersuasive. Plaintiffs first argue that the record is incomplete, and that it is "impossible to evaluate a jury's verdict in a Civil Rights Case without reviewing the testimony pertaining to the

event….." (Pl. Br. 2). Plaintiffs repeat this argument at length in their brief. (Pl. Br. 3-5). However Plaintiffs substantially overstate the impact of the missing testimony.

     First, the trial in question lasted for five days, and only a portion of a single day's testimony is missing. Plaintiffs do not effectively argue why this particular portion is necessary for an evaluation of the propriety of the jury verdict. Moreover, the bulk of the Court time for the day for which testimony is missing consisted of jury selection and opening statements. Consequently, the amount of missing testimony is relatively small. Second, the Court was present for the entire trial, and has its recollections and notes to rely upon, as well as the recollections and notes preserved by counsel. Plaintiffs have not challenged the accuracy of the factual summaries provided by the Court in any of its prior opinions, including the instant decision. Third, the facts presented by Mrs. Lesende in her testimony were largely undisputed. Indeed, most of Newark's cross examination of Mrs. Lesende consisted of re-exposition of the same facts to which she had testified on direct. There were no trial witnesses who directly contradicted her account of the arrest. Fourth, the delay in obtaining a complete transcript was at least partially exacerbated by Plaintiffs lack of diligence in seeking it—Plaintiffs admit that they did not even attempt to obtain the transcript until over two months after the trial ended and after their responding briefs were already overdue. Plaintiffs are not entitled to an extension occasioned by their own delay.

     Plaintiffs arguments based on the incompleteness of the transcript are not persuasive. Even if they were, these arguments are not appropriately made concerning a motion for reconsideration, as they could have been made in timely response to the original motion. By failing to raise the completeness of the record in opposition to Defendant's original motion, Plaintiffs have effectively waived any objection now.

Plaintiffs next cite to Wade v. Colaner, No. 06-3715, 2010 WL 547962 (D.N.J. Dec. 28, 2010) as authority upholding jury verdicts in connection with excessive force claims. While that decision does uphold a significant damages award in connection with such a claim, the facts of the case do not advance Plaintiffs' argument. In Wade, a local police officer was unlawfully pulled over by the state police. When he protested the stop, the officer was arrested for disorderly conduct, threatened with a loaded weapon, pulled out of his car, violently handcuffed, struck in the head with a can of pepper spray, and then sprayed with the same can of pepper spray. Id. 3-6. The Wade plaintiff suffered lasting physical injury as a result of the incident, including injury to his wrists and recurring headaches. In addition, the jury in Wade was presented with significant evidence of post traumatic stress disorder, including evidence that the plaintiff suffered crippling anxiety that made it difficult to breath, persistent flashbacks, nightmares, and personality changes. Id. at 9-10. A jury found that the Wade plaintiff had been subject to excessive force and awarded him $500,000 in compensatory damages. Id. at 13.

While Wade may be on point, the lack of persistent injury and limited evidence of post traumatic stress disorder in this case make the facts of Wade distinguishable. And even if Wade were indistinguishable, the Wade decision only upheld a $500,000 verdict. In this case, the Court has remitted the jury verdict to $750,000—$250,000 more than was upheld in Wade. Plaintiffs have presented no evidence or argument supporting their position that Mrs. Lesende is entitled to an additional $2 million—over five times the Wade judgment.

Next Plaintiffs argue that the Court did not properly weigh Mrs. Lesende's desire to work at Lockheed Martin, or potentially NASA, and the manner in which her assault and subsequent prosecution interfered with those career ambitions. However Plaintiffs never offered any credible evidence at trial that Mrs. Lesende suffered permanent career setbacks attributable directly to her

encounter with Mr. Borrero. Indeed, the City of Newark presented deposition testimony from Mrs. Lesende which contradicted her trial account and cast doubt about the circumstances surrounding how she left her previous job. Moreover, Mrs. Lesende was never convicted of any crime. Her claim at trial that a "background check" would have precluded her from interviewing with Lockheed Martin is not credible. Mrs. Lesende admitted that she chose not to do the interview, and was not reject for the position because of any blemish on her record. In addition, Mrs. Lesende has since taken employment in a position with a salary comparable to the one that she was earning at the time. Absent proof of additional economic injury, Plaintiffs' arguments cannot justify the substantial damages returned by the jury.

Last, Plaintiffs argue that the Court erred by failing to "take into account the period of time from the arrest of the Plaintiff until the dismissal of charges against her in July of 2007." (Pl. Br. 11) This is incorrect.

The Court's October 7, 2011 Opinion makes frequent reference to the extended period of harassment and intimidation suffered by Mrs. Lesende as she was prosecuted on frivolous charges. The Opinion also notes that during that time period, Mr. Lesende was informed by Newark that no action would be taken against Mr. Borrero. Were it not for the significant psychic harm that these actions produced, Mrs. Lesende's damages award could not reasonably have approached $750,000. Moreover, like all of Plaintiffs' arguments, this factor could have been presented in a timely response to the City's motion and is not properly considered here.

### III.   CONCLUSION

Plaintiffs advance no arguments appropriately considered on a motion for reconsideration. Plaintiffs proffer no newly discovered evidence, no newly changed law, and can point to no clear error in the Court's original opinion. Even if these procedural limitations were

discarded, Plaintiffs brief points neither to facts proven at trial which would support a $2.7 million damages verdict, nor a single case—anywhere—upholding a verdict of that size absent substantial, provable medical injury. Mrs. Lesende's emotional damage, though severe, is not without limit, and cannot support a jury verdict of the size rendered. Consequently, the $2.7 million award was "so grossly excessive as to shock the judicial conscience" and thereby appropriately remitted. Cortez v. Trans Union, LLC, 617 F.3d 688, 719 (3d Cir. 2010).

    For the reasons stated above, Plaintiffs' motion for reconsideration is DENIED.

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: November 30, 2011