<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

SARA LESENDE and VICTOR LESENDE,
her husband

       Plaintiffs                             Civ. No.  06-4967 (DRD)

v.                                                 **OPINION**

OFFICER ARNOLD BORRERO AND CITY
OF NEWARK,

       Defendants.

*Appearances by:*

NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN & KRON, P.A.
Lewis Stein, Esq.
Robert D. Kobin, Esq.
20 Commerce Blvd., Suite E
Succasunna, NJ 07876

       *Attorneys for Mrs. Lesende*

HARDIN KUNDLA McKEON & POLETTO, P.A.
John R. Scott, Esq.
Henry T. M. LeFevre-Snee, Esq.
673 Morris Avenue
Springfield, NJ 07081

       *Attorneys for Defendant City of Newark*

<u>**Debevoise, Senior District Judge**</u>

       This case has a protracted procedural history which arises from a unanimous jury's

finding that the City of Newark and a Newark Police Officer are liable to Mrs. Lesende for the

officer's wrongdoing which violated Section 1983 and was a result of an official policy or

custom of the City.  Accordingly, Mrs. Lesende was awarded $2.7 million by an empanelled jury for compensatory damages for pain and suffering, which is at issue today.[1]  The Court thereafter granted the City's motion for remittitur and set a new compensatory damages award of $750,000. Should Mrs. Lesende not accept the remittitur, the Court ordered a new trial as to compensatory damages.  When the second jury returned a higher verdict for $4 million, the Court vacated the previous remittitur order, vacated the second jury's verdict, and reinstated the first jury's verdict. The Third Circuit Court of Appeals found that the vacator violated the law of the case doctrine, and directed the Court to reinstate the second jury's verdict and resolve the City's related motion for remittitur on its merits.

Presently before the Court is a motion by the City under Rule 59(a)(1)(A) for a new trial, or in the alternative a remittitur.  For the reasons set forth below, Defendant's motion for remittitur is GRANTED in part and DENIED in part.  The motion is granted insofar as a new remittitur is set for $1,250,000.  The motion is denied insofar as the Court rejects the notion that the law of the case doctrine mandates that the granting of the first remittitur award.  As described below, the Court assigns a new remittitur amount to account for the second jury's markedly higher damages award despite that no substantially new evidence was presented.

## I.  BACKGROUND

On October 17, 2006, Mrs. Lesende filed a complaint arising from an October 18, 2004 encounter between herself and Officer Borrero.  On June 28, 2011, following a five-day jury trial, judgment was entered in favor of Mrs. Lesende for $2.7 million.  On August 2, 2011, the City moved for a new trial or remittitur.

---

[1]    The jury also found that her husband Mr. Lesende was entitled to $75,000 of compensatory damages for a derivative action, and that Mrs. Lesende was entitled to recover $850,000 from Officer Borrero.  These findings have not been challenged and are not at issue.

On October 7, 2011, the Court remitted the verdict, finding that "a reasonable jury could have awarded $750,000 in compensatory damages" to Mrs. Lesende on the basis of the evidence presented at trial.  Lesende v. Borrero, No. 06 Civ 4967, 2011 U.S. Dist. LEXIS 116551,  at *24 (D.N.J. Oct. 7, 2011) (hereinafter "10-7-2011 Opinion").  The Court noted that Mrs. Lesende did not suffer any "permanent physical injury;" that she presented no evidence that her long-term earning power or credit rating were permanently compromised by the underlying incidents; and that the evidence supported her psychic trauma and emotional damages, but did not justify the $2.7 million verdict.  The Court reasoned:

> If the damages found by the jury are excessive, they are only barely so.  As detailed above, numerous excessive force cases involving false arrest have settled for six figure amounts, even when the physical injuries are minor.  When similar cases have gone to trial, juries have awarded even seven figure verdicts.  The shock, horror, and powerlessness that a law abiding citizen feels when brutalized by the police is considerable and likely to lead to emotional damage of long duration.  Any who would try to reduce these encounters to the cost of bandages and gauze would do well to consider the value of living in a free society.  Few free men would choose to voluntarily surrender the right to be safe from state sanctioned violence and arbitrary incarceration, even at many multiples of the damages awarded to Mrs. Lesende.

> The Court finds that a reasonable jury could have awarded $750,000 in compensatory damages to Mrs. Lesende.  If Plaintiffs will not accept this remittitur, a new trial will be ordered, as required to uphold their seventh amendment rights.

> (Id.)

Mrs. Lesende's subsequent motion for reconsideration was denied on November 30, 2011.  The Court upheld its original finding, stating that " . . . the $2.7 million award was so grossly excessive as to shock the judicial conscience and thereby appropriately remitted [to $750,000]."  Lesende v. Borrero, No. 06 Civ 4967, 2011 U.S. Dist. LEXIS 137263, at *16

3

(D.N.J. Nov. 30, 2011)(hereinafter "11-30-2011 Opinion").  The Court noted "the extended period of harassment and intimidation suffered by Mrs. Lesende as she was prosecuted on frivolous charges," in addition to her being "informed by Newark that no action would be taken [by the City] against Mr. Borrero." (Id. at *15-16.)  The Court explained that "[w]ere it not for the significant psychic harm that these actions produced, Mrs. Lesende's damages award could not reasonably have approached $750,000." (Id.)  Mrs. Lesende declined the $750,000 remittitur and a second trial was held in September of 2012.

The second jury returned an award in favor of Mrs. Lesende for $4 million.  The City again sought remittitur.  On February 21, 2013, following oral argument on the motion for remittitur, the Court vacated the $4 million judgment, vacated the 10-7-2011 Order which granted remittitur on the initial verdict, and reinstated the first judgment of $2.7 million.  Both the City and Mrs. Lesende appealed from this Order.

On May 15, 2014, the Third Circuit Court of Appeals examined the Court's vacator of the 10-7-2011 Order.  See Lesende v. Borrero, 752 F.3d 324 (3d Cir. 2014).  Appellate review found that the 10-7-2011 Order was "well-rooted in both law and fact" and not "improvidently entered," and therefore the Court's vacator of it violated the law of the case doctrine.

> Pursuant to that doctrine, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstances." *In re Pharm. Benefit Antitrust Litig.*, 582 F.3d at 436 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  But "courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" *Id.* (quoting *Christianson*, 486 U.S. at 816); *accord Pepper*, 131 S. Ct. at 1250; *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).
>
> The District Court did not explain how or why its earlier decision was improvidently granted, and, on appeal, we cannot find a basis for concluding that it was clearly erroneous.  To the contrary, we

4

find the District Court's earlier decision to be both well-rooted in
both law and fact.  We are thus forced to conclude that the 10-7-11
Order was not "improvidently entered," and, similarly, we are
forced to conclude that the District Court abused its discretion by
visiting and vacating that order.

(Id. at 339.)

The Third Circuit Court of Appeals therefore vacated the Court's final 2-21-2013 Order,
with instructions to reinstate the second jury's verdict for $4 million and resolve the City's
related motion for remittitur on its merits.

The City then requested leave to supplement its remittitur motion to address the law of
the case doctrine.  On June 6, 2014, the Court granted leave for both parties to file supplemental
briefs.  The motion currently pending before the Court is the City's request for a vacator of the
second jury's verdict of $4 million and a new order for a remittitur of $750,000.  In the event that
Mrs. Lesende again rejects to remittitur offer, the City contends that a third trial on damages
should be ordered.

The City argues that the 10-7-2011 remittitur of $750,000 is "the law of the case," and
represents "the maximum amount that a reasonable jury could award Lesende based on the
evidence presented at both trials." (City Br. at 2.)  The City argues that "extraordinary
circumstances" must be met to revisit the prior decision, none of which are present here. (City
Br. at 17.)  The City maintains that since the evidence submitted at the second trial was
substantially similar to that presented at the first trial "there is nothing materially different for the
Court to consider that would invalidate its prior determination that $750,000 represents the
maximum award that a reasonable jury could return." (City Br. at 18.)  Additionally, the City
maintains that the second jury's damages award does not constitute "new" evidence for
consideration here.

In turn, Mrs. Lesende urges the Court to deny the City's motion for remittitur and allow the $4 million jury verdict to stand.  Mrs. Lesende focuses on the general well-established notion that jury deliberations should be respected.

The Court is presented with an as-yet unanswered narrow question:  Does the law of the case doctrine bind the Court to the first remittitur amount offered when a second jury yields a markedly higher damages award despite the presentation of substantially similar evidence?  There appears to be no reported decision in the United States Courts on the influence of a second jury verdict in excess of the first verdict based on similar evidence upon a further request for a remittitur.

## II.    DISCUSSION

The province of a jury as a fact-finder, even on issues of damages, is not casually disturbed.  "In general, the determination of compensatory damages is within the province of the jury and is entitled to great deference."  Spence v. Bd. of Educ., 806 F.2d 1198, 1204 (3d Cir. 1986).  However, "[t]he district judge is in the best position to evaluate the evidence presented and determine whether or not the jury has come to a rationally based conclusion." Id. at 1201.  "Remittitur is utilized when the trial judge finds that a decision of the jury is excessive or clearly unsupported by the evidence." Dee v. Borough of Dunmore, 474 Fed. Appx. 85, 87 (3d Cir. 2012) (relying on Spence, 806 F.2d at 1201).  The reduction may not be less than the maximum amount that does not "shock the judicial conscience." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 355 (3d Cir. 2001).

The law of the case doctrine is "basically [a] simple principle of disciplined self-consistency" based on principles of finality and comity, as opposed to a lack of authority.  18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478 (2d ed. 2002).  In

other words, "[l]aw-of-the-case principles . . . are a matter of practice that rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards.  In one classic statement, Justice Holmes noted that law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" Id.

"The force of law-of-the-case doctrine is affected by the nature of the first ruling and by the nature of the issues involved.  If the ruling is avowedly tentative or the issues especially important, it may be said that law-of-the-case principles do not apply. . . . Matters of fact, on the other hand, are unlikely candidates for reconsideration after the first full effort." Id. at § 4478.5.[2]

The doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.  Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997).  It is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988).  The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Id. at 815-16 (internal references omitted).

Under the "mandatory" branch of the doctrine, a lower court must honor the decisions of an appellate court in its judicial system.  This is also commonly referred to as the mandate rule.

---

[2]     The doctrine is "based on the salutary and sound public policy that litigation should come to an end.  It is predicated on the premise that there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members, and that it would be impossible for an appellate court to perform its duties satisfactorily and efficiently and expeditiously if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal thereof." Parts and Electric Motors, Inc. v. Sterling Electric, Inc., 866 F.2d 228, 231 (7th Cir. 1988) (internal reference omitted) (relying in part on White v. Murtha, 377 F.2d 428, 431 (5th Cir. 1967)).

On mandate, the law of the case doctrine is rigid and the district court must follow the mandate of the higher court.  See e.g., Vendo Co. v. Lektro-Vend Corp., 434 U.S. 425, 427-28 (1978). The second branch of the law of the case doctrine is implicated when a court is invited to reconsider issues that it has already decided.  See Christianson, 486 U.S. at 816 (the doctrine applies "as much to the decisions of a coordinate court in the same case as to the court's own decisions.").

The doctrine does not restrict a court's power but rather governs its exercise of discretion. In re: City of Philadelphia Litigation, 158 F.3d 711, 718 (3d Cir. 1998); Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997). Accordingly, the doctrine does not preclude reconsideration of previously decided issues in extraordinary circumstances such as where:  (1) new evidence is available; (2) a supervening law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.  Id. at 116-117.  It is undisputed that these extraordinary circumstances do not apply here:  no substantially new evidence was presented; no supervening law was announced; and the Third Circuit Court of Appeals expressly stated that the 10-7-2011 Order was "well rooted" and not "improvidently entered."

The Third Circuit Court of Appeals found that, although invited by the City and Mrs. Lesende, the Court's vacator of the 10-7-2011 Order, reinstatement of the first jury's verdict, and vacator of the second jury's verdict, violated the law of the case doctrine.   The appeals court "[found] the District Court's earlier decision to be both well-rooted in both law and fact.  We are thus forced to conclude that the 10-7-11 Order was not 'improvidently entered,' and, similarly, we are forced to conclude that the District Court abused its discretion by visiting and vacating that order."  Lesende, 752 F.3d at 338.  The City would have the Court interpret the appellate

8

decision as directing the remittitur amount to be the binding law of the case here.  This is a step removed from the appellate court's finding, however.  The Court of Appeals directed that the second jury's verdict be reinstated and that the related motion for remittitur be resolved on its merits.  The Third Circuit Court of Appeals did not instruct the Court on how, if at all, the higher verdict may affect the Court's discretion in setting a second remittitur amount.

The Eastern District of Wisconsin addressed a different but related question when it rejected the argument that a remittitur can prevent the introduction of new evidence in a second damages trial based on the rule of law doctrine.  Pincus v. Pabst Brewing Co., 752 F. Supp. 871 (E.D. Wis. 1990).  In dicta, the district court pronounced that if no new evidence were to be presented in the upcoming second trial, the court would be bound to the previous remittitur amount due to the law of the case.  This is the only decision before the Court which sets forth such a principle.

The Seventh Amendment reserves the determination of damages, in jury trials within its scope, to the jury.  "[T]he right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const., Amdt. 7.

In Hetzel, the Supreme Court explained that when a trial court determines that the evidence does not support the jury's general damages award, the court "has no authority . . . to enter an absolute judgment for any other sum than that assessed by the jury . . . . without allowing petitioner the option of a new trial." Hetzel v. Prince William Cnty., 523 U.S. 208, 211 (1998) (per curiam).  "Thus, a court must afford a plaintiff the option of a new trial when it attempts to reduce a jury award because it believes the amount of the verdict is not supported by the evidence."  Cortez v. Trans Union, LLC et al., 617 F.3d 688, 716 (3d Cir. 2010).

The City's position here begs the question:  What would be the purpose of offering a new trial if the Court would be bound to the original remittitur offer?  Such a position would circumvent the spirit of the Seventh Amendment, the reasoning of <u>Hetzel</u>, and the discretionary powers vested in the court.  If the second jury determines that the damages award should be less than that reached by the first verdict, the second verdict would only confirm the lower range which an initial remittitur offered.  <u>See</u> <u>e.g.</u>, <u>Dee v. Borough of Dunmore</u>, 474 Fed. Appx. 85, 89 (3d Cir. 2012) (upholding the district court's remittitur on emotional distress damages, finding that the decision to remit the jury verdict from $150,000 to $50,000 was supported by the second jury's decision to award $47,500.  However, if the second jury determines that the damages award should be substantially greater than that reached by the first jury, as is the case here, then the Court should use its discretion to take into consideration the fact-finding deliberations of the later panel in setting a new appropriate remittitur amount.

The ranges of compensatory damages in a jury case are not fixed in stone or subject to a mathematical formula.  Similarly, when a judge decides a remittitur motion, there is no precise way to determine a proper remittal figure.  When the Court found that $750,000 was the appropriate remittitur in this case, it does not follow that a different judge might not have properly settled upon a somewhat higher or somewhat lower figure.  The remittitur process contemplates that a judge may issue a remittitur order, that a plaintiff might reject the remittitur and request a new trial on damages, and that a subsequent jury might return a verdict either higher or lower than the remitted amount.  The law of the case doctrine simply has no place in this process.

Therefore, in order to comply with the Court of Appeals's mandate, it is necessary to address the City's remittitur motion directed to the $4 million verdict.  The appalling facts as

10

recited in the Opinion deciding the earlier remittitur motion are incorporated by reference.  They disclose the physical violence inflicted upon Mrs. Lesende, the malicious prosecution, her false arrest and imprisonment, the City's failure to take action for years, and the City's continually obstructing Mrs. Lesende's and her attorney's efforts to obtain relief and pursue the errant police officer.  There are incorporated the remittitur cases referred to in the earlier remittitur Opinion permitting damages to plaintiffs victimized under similar circumstances.[3]

This Court previously found that " . . . the $2.7 million award was so grossly excessive as to shock the judicial conscience" and thereby remitted that amount to $750,000.  If $2.7 million was "so grossly excessive," $4 million is now grossly excessive.  Nevertheless, the second and the first jury verdicts reflect how seriously two juries treated the injuries inflicted on Mrs. Lesende.  It causes this Court to consider whether it may have undervalued the psychological injuries when it established an appropriate remittitur figure on the first remittitur motion.  The Court concludes that it did undervalue these injuries and that the $4 million award should be remitted to $1,250,000.  Mrs. Lesende shall have the option of accepting a judgment in that amount or seeking a new trial on damages.  The remitted amount of course does not include attorneys fees and costs.

## III.   CONCLUSION

For the foregoing reasons, the City's motion for a remittitur is granted in part and the jury verdict of $4 million is remitted to $1,250,000.  The motion is denied in part, insofar as the Court

---

[3]     The Court of Appeals acknowledged the Court's examination of several awards in excessive force and malicious prosecution cases, and commended the Court for noting that "[i]t would be particularly inappropriate to order a drastic remittitur based on the handful of decisions submitted by [the City]" and "not confin[ing] itself to the self-serving cases in [the City's] brief when great volumes of information exist[ed] on jury awards and settlements in excessive force and malicious prosecution cases." Lesende, 752 F.3d at 330-331, n. 6 (quoting 10-7-2011 Opinion).

rejects the notion that it is bound to apply the $750,000 remittitur award initially granted on

October 7, 2011 pursuant to the first jury's verdict of $2.7 million.   Mrs. Lesende shall have the

option of accepting the $1,250,000 remittitur or seeking a new trial on compensatory damages.

The Court shall enter an Order implementing this Opinion.


/s/ Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE, U.S.S.D.J.**

**Dated:**  August 22nd, 2014